**Lester WHITE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–92–137–CR.**

Court of Appeals of Texas,
Texarkana.

April 6, 1993.

**54**

Monty G. Murry, Gooding & Dodson, Texarkana, for appellant.

John F. Miller, Jr., Bowie County Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Lester White appeals a conviction for possession of cocaine. A jury found him guilty and, based on this verdict and two previous felony convictions, the court sentenced him to twenty-five years incarceration.

White contends that the trial court erred in overruling his motion to suppress evidence obtained by an unlawful search and seizure. Specifically, White contends that he was detained in violation of Article I, § 9 of the Texas Constitution and the Fourth and Fourteenth Amendments to the United States Constitution and, therefore, the evidence obtained as a result of the detention is inadmissible.

## BACKGROUND

At the hearing on the motion to suppress, Officer Kevin Shutte of the Texarkana Police Department testified that shortly after midnight on April 17, 1991, four officers, including Shutte, were driving down West 12th Street in Texarkana when they noticed the car in front of them slow down, apparently because three black males, including White, were in the roadway. The officer driving the car then stopped the vehicle and all four officers got out quickly as the three black males proceeded to walk away. Officer Shutte went after White because Shutte had prior knowledge of him and was closest in proximity upon getting out of the car. Shutte asked or told White to stop and, after he did so, Shutte visually inspected White with the aid of a flashlight.[1] Officer Shutte then discovered a metal crack pipe sticking

---

1. At different points in his testimony, Shutte stated that he asked White to stop and that he told White to stop.

out of the waistband of White's jogging pants.[2] Officer Shutte arrested White for possession of drug paraphernalia.[3] Shutte searched White after the arrest and discovered a 0.03 gram rock-like substance later determined to be cocaine.

## STANDARD OF REVIEW

 The finding of the trial court at a suppression hearing should not be disturbed absent a clear abuse of discretion. *Cantu v. State*, 817 S.W.2d 74 (Tex.Crim. App.1991). If the trial judge's decision is correct on any theory of law applicable to the case, it will be sustained. *Romero v. State*, 800 S.W.2d 539 (Tex.Crim.App.1990).

## DISCUSSION AND HOLDING

White bases his appeal on both the Texas and United States Constitutions. The duty of this Court is to analyze each of these contentions separately and not blindly follow federal law in construing the Texas Constitution. *Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991).

White cites no cases and this Court has found none which establish a Texas rule on detentions that differs from the federal rule on detentions. *See Cook v. State*, 832 S.W.2d 62 (Tex.App.–Dallas 1992, no pet.) (concluded that there were no cases showing a difference between the Texas and United States constitutional rule on detentions); *see also Davis v. State*, 829 S.W.2d 218 (Tex.Crim.App.1992) (court did not distinguish between state and federal constitutional claims in deciding case on both grounds). Furthermore, we have found no difference in the statutory or constitutional language which would require a different treatment.

The analysis of this case under either the Texas or federal constitution requires answering two questions: first, when did the detention of White begin, and second, did Officer Shutte possess a reasonable suspicion of a criminal act to support the detention?

 The test for when a detention has occurred is an objective test applied from the point of view of the alleged detainee and inquiring whether a reasonable person would have felt free to leave under the same circumstances. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Daniels v. State*, 718 S.W.2d 702, 706 (Tex.Crim. App.1986), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State*, 758 S.W.2d 772, 780 n. 3 (Tex.Crim.App.1988); *Brown v. State*, 790 S.W.2d 357 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). In *Mendenhall*, the Court suggested several factors that weigh in favor of finding that a detention occurred. These factors include the threatening presence of several officers, especially officers in uniform; the display or presence of weapons; physical touching of the detainee by one of the officers; and the use of language or tone of voice indicating that compliance with the officer's request may be compelled. *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877.

In the present case, several officers wearing raid vests, with the word "police" on them in fluorescent print, jumped out of an unmarked car, and one of them approached White and asked or told him to stop. White presented no evidence suggesting that the officers displayed any weapon or even carried any, or that any officer physically touched him until after

---

**2.** Officer Shutte offered three different versions of the events leading up to the arrest. On direct examination, he stated the facts as presented above, and both parties adopted this scenario in their briefs. On cross examination, he stated at one point that he did not discover the crack pipe "until [White] was in the vehicle," but he does not explain why White may have been in the police vehicle before the discovery of the pipe. Later, Shutte testified that he saw the pipe before he asked White to stop.

**3.** It is illegal in Texas to possess drug paraphernalia if the possessor intends to use it in connection with a controlled substance or if the possessor intends to deliver it to someone knowing that the recipient intends to use it for an illicit purpose. Tex.Health & Safety Code Ann. § 481.-125 (Vernon 1992).

the discovery of the crack pipe. The succinct question here is whether Shutte's apparel, his brisk movement toward White, and his request or command to stop make this episode a detention. In *Brown*, the court found that a detention occurred when two uniformed officers approached the defendant in a dark and fairly deserted area and asked her to stand. *Brown*, 790 S.W.2d at 360. In *Ebarb v. State*, 598 S.W.2d 842 (Tex.Crim.App. [Panel Op.] 1979), a detention occurred when an officer ordered the defendant to roll down her car window.

In answer to the first question, we find that the detention in the present case began when Officer Shutte asked or told White to stop.

We must now determine whether Officer Shutte had, at the time of the detention, a reasonable suspicion based on specific articulable facts that, in light of his experience and personal knowledge, reasonably warranted the intrusion on the personal freedom of the detained citizen. *See Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim.App.1983). To validate the suspicion, the officer must have a reasonable suspicion at the time of the detention that some activity out of the ordinary is occurring or recently occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity relates to a crime. *Id.* When the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *Id.* Detention based on a hunch is unlawful. *Id.*

If the trial court believed the version of Shutte's testimony stating that he saw the crack pipe before he stopped White, then the officer had sufficient basis to detain White without further inquiry. However, on appeal counsel for both sides have accepted a version in which White was told to stop before the officer saw the crack pipe.

We shall discuss the application of the law to that sequence of events.

Officer Shutte testified that the department had received telephone calls that night complaining that black males were flagging down cars in an attempt to sell drugs at a location on West 12th Street. He further testified that it was his knowledge that drug dealers frequently used the tactic of stopping cars to sell drugs. Although Shutte testified that he saw the car in front of the police car slow down, and he presumed the car slowed because White and the others were in the roadway, other officers with Shutte testified that they observed the black males attempting to flag the car down.

Anonymous calls have been held to be sufficient to give rise to a reasonable suspicion for a detention. *Mann v. State*, 525 S.W.2d 174 (Tex.Crim.App.1975). In *Mann*, however, the anonymous caller gave a description of the eventual detainees, the car in which they were riding, and the crime that they were planning to commit. *Id.* at 176. In *Ebarb v. State*, the court found the detention of the defendant invalid because, although the officer stopped the defendant's car based on a tip that she had a gun in the car, the record contained insufficient information about the informant to allow the court to judge the informant's reliability. *Id.* at 845.

In the present case, the officers had no information regarding the identity of the callers, nor did the officers allege that any caller gave a specific description of White himself but, instead, the callers gave very general descriptions regarding black males in the roadway at a specific location. The officers observed White in the roadway shortly before the detention. Officer Shutte testified that White and his companions were in the road blocking traffic, and two of the other officers testified that the men in the roadway actually attempted to flag the car down.[4] Shutte also testified that drug dealers often use the tactic of

---

**4.** In *Garrison v. State*, 726 S.W.2d 134 (Tex. Crim.App.1987), the court held that for determining probable cause for arrest, the sum of information known to cooperating officers at the time of the arrest could be considered. This principle was applied to determining whether reasonable suspicion existed for detention in *United States v. Jones*, 759 F.2d 633, 642 (8th Cir.1985).

stopping cars in the roadway when trying to sell drugs, that standing in a road is against the traffic laws, and that he considered the area in which he arrested White to be a drug dealing area. *See Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (in upholding the detention, court considered fact that police found defendant in an area with a high incidence of drug trafficking).

The activity of standing in a roadway blocking traffic is certainly out of the ordinary, and is itself an illegal act often associated with drug dealing. This activity, coupled with the anonymous telephone calls reporting black males attempting to sell drugs by stopping cars at that location, constituted sufficient evidence to justify a reasonable suspicion so that Shutte could detain White. We find that the trial court did not abuse its discretion in refusing to suppress the evidence obtained in subsequent search. These points of error are overruled.

The judgment of the trial court is affirmed.