In The
Court of Appeals
For The
First District of Texas
____________

NOS. 01-02-00317-CR,
         01-02-00316-CR
____________

LAKEITH LAWAYNE COLEMAN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause Nos. 881374, 881375



 
O P I N I O N
          This appeal derives from two convictions in two separate causes in the trial
court (trial cause numbers 881374 and 881375, and appellate cause numbers 01-02-00317-CR and 01-02-00316-CR, respectively). Because both appeals raise
substantially the same issues, we address them together on appeal.
          A jury found appellant, Lakeith Lawayne Coleman, guilty of (1) the felony
offense of possession with intent to deliver a controlled substance, cocaine, weighing
more than four grams and less than 200 grams, and (2) the felony offense of
possession with intent to deliver a controlled substance, phencyclidine (PCP),
weighing at least 400 grams. The jury found that appellant used a deadly weapon, a
firearm, during the commission of each offense. The trial court sentenced appellant
to 50 years’ confinement in cause number 01-02-00317-CR and 60 years’
confinement in cause number 01-02-00316-CR and assessed a fine in the amount of
$150,000. 
          With regard to both cause numbers, appellant contends that: (1) the trial court
erred in denying his first and second motions to suppress evidence and (2) the
evidence was legally and factually insufficient: (a) to prove that his consent to search
was voluntary, (b) to affirmatively link the appellant to the controlled substances, and
(c) to support the jury’s finding that he used or exhibited a deadly weapon during the
commission of the offense. In cause number 01-02-00316-CR, appellant argues that 
the evidence was legally and factually insufficient to establish an adequate chain of
custody between the substance seized and the substance identified as PCP. We
affirm.
Background
          Officers Fuller and Lerma were conducting narcotics surveillance in the 3800
block of Kashmere in Houston. The officers saw a truck, which they had seen a few
days earlier at 4908 Crane Street, drive up and park in front of 3818 Kashmere. 
Appellant got out of the truck, walked around to the front of it while talking on a cell
phone, and then got back into the truck. A car then pulled up and stopped behind
appellant’s truck. A man got out of the car, got into the passenger’s seat of
appellant’s truck, and, after a minute or two, got out of the truck and left. This pattern
of behavior was observed two more times during the surveillance. Officer Lerma
testified that, because of this behavior, the officers believed that appellant was
involved in narcotics activity.
          Officer Fuller contacted Officer Gratz, who was in uniform and assisting the
officers, and told him to approach and detain appellant. Officer Gratz detained
appellant; placing him in the back seat of the patrol car. The officers smelled the odor
of PCP emanating from appellant’s truck when the door was opened. Officer Fuller
approached appellant and asked if there were narcotics in the truck. Appellant said
there were not. Officer Fuller then asked appellant to give the officers consent to
search his truck and his residence. After appellant’s handcuffs were removed, he read
and signed a consent to search form. The officers testified that appellant appeared to
understand the form and was not forced to sign it.
          Subsequently, the officers searched appellant’s truck, but no narcotics were
found.
          Appellant was immediately transported to his residence, where Officers Fuller
and Gratz opened the door with appellant’s key and began searching the house. 
Appellant remained in the patrol car during the search. The officers found controlled
substances, including PCP and cocaine, as well as drug paraphernalia used to
distribute controlled substances, such as vials, in appellant’s house. The officers also
found large amounts of money and jewelry and appellant’s college identification card
inside a safe located in the front bedroom. Weapons were also recovered from this
bedroom.
          Appellant admitted that he lived in the house, and the officers found mail with
appellant’s name and address on it in the front bedroom. Appellant admitted that the
electric power at the house was registered in his name, and he told an interviewer at
the jail that he lived alone in the house. 
First Motion to Suppress
          In his first points of error in both cause numbers, appellant contends that the
trial court erred in denying his first motion to suppress evidence based on consent
given after his detention had become unlawful. 
          Appellant filed a pretrial motion to suppress. A rubber stamped notation on the
order form attached to the motion to suppress states, “Set for hearing prior to Voir
Dire, if not dispositive.” Generally, a defendant must get an explicit ruling on a
complaint to preserve error. Tex. R. App. P. 33.1 (a)(2)(A); Darty v. State, 709
S.W.2d 652, 655 (Tex. Crim. App. 1986); Villegas v. State, 871 S.W.2d 894, 899
(Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). The mere filing of a motion to
suppress does not preserve error. Thomas v. State, 884 S.W.2d 215, 216 (Tex.
App.—El Paso 1994, pet. ref’d). Appellant did not obtain a ruling on this motion to
suppress. Consequently, appellant did not preserve this issue for appellate review. 
          We overrule appellant’s first points of error in both cause numbers.
Second Motion to Suppress
          In his second points of error in both cause numbers, appellant contends that the
trial court erred in denying his second motion to suppress evidence based on consent
given after his detention had become unlawful. A timely motion at trial is required
in order to preserve error. Tex. R. App. P. 33.1 (a)(1); Thomas, 884 S.W.2d at 216. 
A motion must be “raised at the earliest opportunity” or “as soon as the ground. . .
becomes apparent” to be timely. Thomas, 884 S.W.2d at 216. Generally, the ground
for objection becomes apparent when the item is offered into evidence. Dinkins v.
State, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). Appellant must object before
substantial testimony is given regarding the alleged illegally seized item. Angelo v.
State, 977 S.W.2d 169, 177 (Tex. App.—Austin 1998, pet. ref'd). Even constitutional
rights, such as protection from an unlawful search and seizure, can be waived by
failing to object in a timely manner. Little v. State, 758 S.W.2d 551, 564 (Tex. Crim.
App. 1988).
          Appellant’s second motion to suppress was not brought to the trial court’s
attention until after the State had rested its case during the guilt-innocence stage of
the trial. By that time, four police officers and a crime laboratory chemist had already
testified extensively about the allegedly illegally seized items. Because his motion
to suppress was not timely, appellant waived error, if any.
          We overrule appellant’s second points of error in both cause numbers.
Sufficiency of the Evidence
          In his third through eleventh points of error, appellant challenges the legal and
factual sufficiency of the evidence. We review the legal sufficiency of the evidence
by viewing the evidence in the light most favorable to the verdict to determine
whether a rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Taylor v. State, 10 S.W.3d 673, 685 (Tex. Crim. App.
2000). In reviewing the factual sufficiency of the evidence, we examine all the
evidence in a neutral light and ask whether proof of guilt is so obviously weak or
greatly outweighed by contrary proof as to indicate that a manifest injustice has
occurred. King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000). In conducting
our analysis, we must avoid substituting our judgment for that of the fact-finder. Id. Unlawful Detention and Consent to Search 
          In his third and fourth points of error in both cause numbers, appellant
contends that the evidence was legally and factually insufficient to support his
conviction for unlawful possession of cocaine and PCP with intent to deliver because
the State did not prove that his consent to the search was not tainted by an unlawful
detention. In his fifth and sixth points of error in both cause numbers, appellant
contends that the evidence was legally and factually insufficient to support his
conviction for unlawful possession of cocaine and PCP with intent to deliver because
the State did not prove that appellant voluntarily consented to the search of his 
residence. 
          Appellant’s arguments are without merit. It is not the State’s burden to prove,
as an element of the offense, that the evidence of the offense was properly and
lawfully obtained.


 Accordingly, we overrule appellant’s third through sixth points
of error in both cause numbers.
Affirmative Links
          In his seventh and eighth points of error in both cause numbers, appellant
contends that the evidence was legally and factually insufficient where the State did
not affirmatively link appellant to the cocaine and PCP found at his house. To
convict an accused of unlawful possession of a controlled substance, the State must
prove two elements: (1) that the accused exercised care, custody, control, and
management over the contraband; and (2) that the accused knew the matter was
contraband. Gilbert v. State, 874 S.W.2d 290, 297 (Tex. App—Houston [1st Dist.]
1994, pet. ref’d); see also Tex. Health & Safety Code Ann. § 481.002(38)
(Vernon 1992). 
          We have held that the following circumstances are evidence of affirmative
links: (1) presence when the search was executed; (2) contraband in plain view; (3)
proximity to and accessibility of the contraband; (4) accused under the influence of
contraband when arrested; (5) accused’s possession of other contraband when
arrested; (6) accused’s incriminating statements when arrested; (7) attempted flight;
(8) furtive gestures; (9) odor of the contraband; (10) presence of other contraband;
(11) accused’s right to possession of the place where contraband was found; and (12)
narcotics found in an enclosed place. State v. Derrow, 981 S.W.2d 776, 778 (Tex.
App—Houston [1st Dist.] 1998, pet. ref’d). Presence of a large amount of cash can
supply an inference that an individual is trafficking and, therefore, in possession of
contraband. Dade v. State, 956 S.W.2d 75, 78-79 (Tex. App.—Tyler 1997, pet.
ref’d). 
          The number of affirmative links present is not as important as the logical force
they have in establishing the elements of the offense. Corpus v. State, 30 S.W.3d 35,
37-38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d). We view the totality of the
facts and circumstances. Sosa v. State, 845 S.W.2d 479, 483-84 (Tex.
App.—Houston [1st Dist.] 1993, pet ref’d). 
          The evidence shows that appellant had multiple affirmative links to the cocaine
and PCP. Appellant had a key to the house. Evidence was presented that appellant
lived alone in the house, that he was renting the house, and that the electric power
was registered in his name. The only mail that the officers found during the search
was addressed to him at the Crane address and his vehicle was registered to that
address. Appellant’s college identification card was found in a safe, an enclosed
place, that also contained PCP and a large amount of money and jewelry. Other
contraband, cocaine and PCP, were found in other areas of the house. The officers
testified that they smelled PCP in his truck and in his house. They also testified that
he was nervous when they questioned him about his house.
          Viewing the evidence in the light most favorable to the verdict, a rational jury
could have found, beyond a reasonable doubt, that appellant knowingly and
intentionally possessed cocaine weighing more than four grams and less than 200
grams, and PCP weighing at least 400 grams with intent to deliver. 
          We overrule appellant’s seventh points of error in both causes.
          Finding the evidence legally sufficient, we proceed to appellant’s eighth points
of error in both causes, his factual sufficiency claims. In addition to the evidence that
we considered under the legal sufficiency points of error, we now consider the rest
of the evidence.
          Appellant argues that his entire family had access and control over the
residence and that his brother had convictions for unlawful possession of a controlled
substance. Appellant presented evidence that he shared the premises with others, that
others had access to the premises, and that appellant had no knowledge of the
presence of controlled substances on the premises. 
          However, evidence is not factually insufficient merely because appellant offers
a different explanation for the facts. Russell v. State, 665 S.W.2d 771, 776 (Tex.
Crim. App. 1983); Sosa, 845 S.W.2d at 483. The jury as the trier of fact was the sole
judge of the credibility of the witnesses and was free to accept or reject all or part of
the witnesses’ testimony. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996). We cannot say that proof that appellant possessed and delivered the cocaine
and PCP is so obviously weak or greatly outweighed by contrary proof as to indicate
that a manifest injustice has occurred.
          We overrule appellant’s eighth points of error in both causes.
Deadly Weapon
           In his ninth points of error in both cause numbers, appellant contends that the
evidence was insufficient to support the jury’s finding that he used or exhibited a
deadly weapon during the commission of the offenses. In Patterson v. State, the
Court of Criminal Appeals explained the difference between “use” and “exhibit.” 769
S.W.2d 938, 941 (Tex. Crim. App. 1989). The court determined:
“used . . . during the commission of a felony offense” refers
certainly to the wielding of a firearm with effect, but it
extends as well to any employment of a deadly weapon,
even its simple possession, if such possession facilitates
the associated felony.
 
Id. at 941; Wynn v. State, 847 S.W.2d 357, 360 (Tex. App.—Houston [1st Dist.]
1993), aff’d on other grounds, 864 S.W.2d 539 (Tex. Crim. App. 1993).
          In Patterson, the defendant was convicted of illegally possessing
methamphetamine and using or exhibiting a deadly weapon during the commission
of the offense. 769 S.W.2d at 939. When the police kicked in the door, Patterson
was sitting on the far end of the sofa. Id. A bag containing methamphetamine, a
wallet with $905 in cash, and a “gun boot” were located next to Patterson on an end
table. Id. When the police entered, Patterson raised his hands and told the officers
he had a gun between his leg and the end of the sofa. Id. On appeal, Patterson argued
that the gun was to protect his money, not the narcotics. Id. at 940. The Court of
Criminal Appeals held that a rational trier of fact could have found that the defendant
used the firearm during the commission of the felony offense of possessing the
contraband, in the sense that the firearm protected and facilitated the defendant’s care,
custody, and management of the contraband. Id at 942.
          By contrast, in Wynn, this Court held that there was no evidence to support a
deadly weapon finding where (1) the defendant was in the patrol car when the officers
searched the house and was not within reach of the narcotics and guns, (2) the guns
were found in a different bedroom than the narcotics, (3) the only room in the house
identified with the defendant contained his wallet but did not contain any narcotics
or weapons, (4) the clothing found in the closet where the narcotics were located was
not linked to the defendant, and (5) the defendant was only one among at least two
other persons who had access to the house. Wynn, 847 S.W.2d at 360-61.
          In this case, as in Patterson, the guns were found in close proximity to the
narcotics. The guns were found in the same bedroom as the safe. The safe contained:
(1) two large bottles of PCP, (2) a large amount of money (over $11,000), (3) a large
amount of jewelry, and (4) appellant’s college identification card. Mail with
appellant’s name and address was also found in this room. The State presented
evidence that appellant lived alone in the house. Under the facts and circumstances
of this case, a rational trier of fact could have found that appellant used the firearm
in the sense that the firearm protected and facilitated appellant’s possession of the
contraband. We follow the reasoning in Patterson, and conclude that the evidence
was sufficient to justify an affirmative finding that appellant used or exhibited a
deadly weapon during the commission of the offense. 
          We overrule appellant’s ninth points of error in both causes. 
Chain of Custody
          In his tenth and eleventh points of error in cause number 01-02-00316-CR,
appellant contends that the evidence was legally and factually insufficient to establish
an adequate chain of custody between the substance seized and the substance
identified as PCP at trial. Officer Fuller testified that he recovered an orange juice
bottle, later determined to contain PCP, behind the entertainment center in the back
bedroom. He found two more large bottles containing PCP in the safe in the front
bedroom. Officer Fuller identified State’s Exhibit 26 as a photograph of the three
bottles containing PCP that he found in appellant’s house. He testified that he
secured the bottles, tagged them, and put them into a narcotics lockbox. He picked
up the narcotics from the HPD crime lab. He testified that he recognized State’s
Exhibits 3 and 4 because of the labels and lab numbers on them. Officer Fuller
testified that, to his knowledge, aside from the testing, the narcotics had not been
tampered with in any way.
          Vipul Patel, a chemist with the Houston Police Department Crime Lab, testified
that, after he received the juice bottles (depicted in State’s Exhibit 26), he conducted
a scientific analysis and determined that they contained PCP. He dried out all of the
PCP from the bottles and put it into State’s Exhibit 3. He put the remainder in State’s
Exhibit 4. He identified State’s Exhibit 3 and 4 as the items containing the substance
that he tested. Patel testified the PCP was not tampered with in any way.
          Appellant presented no evidence that the PCP contained in State’s Exhibit 3 
was not the same substance the officers found in his home.
          We conclude that the evidence was legally and factually sufficient to support
the finding that the substance contained in the bottles seized by the officer was the
same substance that the chemist tested and identified as PCP.
          We overrule appellant’s tenth and eleventh points of error in cause number 01-02-00316-CR.
Conclusion
          We affirm the judgments of the trial court in both causes.
 
                                                             Adele Hedges
                                                             Justice

Panel consists of Justices Hedges, Nuchia, and Keyes.
 
Publish. Tex. R. App. P. 47.2.